Monfort's Administrator *v.* Rowland.

Administrator of MARY JANE MONFORT, deceased,

*v.*

GEORGE H. ROWLAND et al.

1. If a party against whom an incompetent witness is called, with full knowledge of his incompetency, allows the witness to be sworn and examined, without objection, he will be considered to have waived the objection to his competency.

2. Though the party against whom an incompetent witness has given evidence may have lost his right to object to his evidence, yet the court may, on its own motion, if it appears that the evidence is opposed to the policy of the law and dangerous to the administration of justice, suppress it.

On final hearing on bill and answer and proofs taken before a master.

*Mr. William H. Davis,* for complainant.

*Mr. Chilion Robbins*, for defendants.

VAN FLEET, V. C.

The most serious difficulty which this case presents is what shall be done with certain evidence now in the case. The suit is brought by the administrator of Mary J. Monfort, deceased, to foreclose a mortgage made to Mary J. Monfort by the defendants, George H. Rowland and Eliza, his wife. The defence is usury. The mortgaged premises are situate at Asbury Park, in the county of Monmouth, and it is alleged that the contract for the loan secured by the mortgage was made in that county. Monmouth county has a special usury law. It declares that all contracts for the loan of money, whereby above the value of $7 for the forbearance of $100, for one year, shall be taken, directly or indirectly, shall be utterly void. *Rev. p. 520 § 7.* This statute was in force when the mortgage sought to be foreclosed was executed.

The usury is attempted to be proved by the evidence of the mortgagor. He swears that he made the contract for the loan with the mortgagee in person, at his residence in Monmouth county, and testifies to facts which show that the mortgage was founded on a usurious contract. He also swears that he paid six months' interest on the mortgage at the usurious rate agreed upon. He was a competent witness. He had a right to be sworn and to give evidence, but not to give evidence as to any transaction with or statement by the intestate. A supplement to the act concerning evidence, passed in 1880, makes any party to a civil action in any court of law or equity of this state competent to be sworn and examined as a witness, notwithstanding any party thereto may sue or be sued in a representative capacity, but it is expressly provided that the provisions of this supplement shall not extend so as to permit testimony to be given as to any transaction with or statement by any testator or intestate represented in said action. *P. L. of 1880 p. 52.* The mortgagor was permitted, notwithstanding his incompetency to give evidence on that point, to testify, without objection, to the terms of the contract he claims to have made with the intestate. If his evidence

is allowed to stand, and full credit be given to it, usury is proved and the mortgage must be declared worthless.

The party against whom an incompetent witness is called has a right to elect whether he will allow him to testify or not. He may waive his right to exclude him. If the objection to his competency is known when the witness is called, the party against whom he is called must, as a general rule, decide at once whether he will take the risk of his evidence or exclude him. If, with full knowledge of the incompetency of the witness, he allows him to be sworn and examined, without objection, he will be understood as taking the risk of his evidence, and as waiving, irrevocably, his right to have his evidence excluded. *Berryman* v. *Graham, 6 C. E. Gr. 370; Boone* v. *Ridgeway's Exrs., 2 Stew. Eq. 543; 1 Greenl. Ev. § 421; 3 Greenl. Ev. § 369.* The objection to the competency of the mortgagor as a witness in this case, was one that was apparent in the very title of the cause, and unless it is assumed that the counsel of the complainant was grossly ignorant or wantonly careless, it must be understood that he intentionally waived his right to object to the defendant's evidence. It is clear that so far as the action of the parties can make incompetent evidence competent, it has been done in this case.

But the more important question now before the court is, Has the court, in consequence of the action of the parties, lost all control over this evidence so that it is now bound to accept evidence which, by law, is illegal, as purged, by the action of the parties, of its illegality? The evidence in question stands strongly opposed to the policy of the law. At common law, neither the parties to a suit, nor persons interested in its result, were competent witnesses. But this rule has been abolished. Interest no longer disqualifies, and the parties now are competent in almost every case. The legislature, however, in the changing of the law, have, in all their utterances, manifested a strong determination to preserve a just mutuality in the right to testify. In all the earlier legislation on this subject, it was expressly provided that in suits where either party to the transaction put in contest by the suit was dead, the survivor should not be a competent wit-

ness, unless his adversary chose to make him so by becoming a witness himself. The design was a highly salutary one. It is eminently just that when death has sealed the lips of one party, the law should seal the lips of the other. The great object of the restriction, as stated by the chancellor in *Colfax* v. *Colfax, 5 Stew. Eq. 206*, was to guard against the injustice which would arise from a want of mutuality in the exercise of the right to testify. There can be no doubt that if parties are allowed to testify in their own cases, the safe administration of justice requires that they should be put upon an equal footing, and that if one is allowed to go upon the stand to testify, the other should have the right to go there also, either to confirm or to contradict his adversary's evidence, and that when the lips of one are closed, the other should not be tempted to commit perjury by being permitted to testify to matters which his adversary can neither contradict nor explain.

If the evidence of one party was admissible when the other could not testify, the interests of mankind, an eminent English judge has recently said, would, in his opinion, imperatively require that unless corroborated it should be wholly disregarded. He further said: "Nobody would be safe in respect of his pecuniary transactions, if legal documents found in his possession at the time of his death, and endeavored to be enforced by his executors, could be set aside, varied or altered by the parol evidence of the person who had bound himself." *Hill* v. *Wilson, L. R. (8 Ch. App.) 888, 900.*

It is clear, then, I think, that the evidence under consideration is so repugnant to the policy of the law and so dangerous to the administration of justice, that unless the power of the court is inadequate for that purpose, it should be excluded from the case. And if the power of the court is inadequate, *cestuis que trust* are without adequate protection. Their rights may be irretrievably lost by the ignorance or carelessness of the counsel selected by their trustee. The mortgage on trial now was given to secure only $1,500, but if it can be avoided by evidence which is not only unlawful but inimical to the policy of a highly-salutary law, simply because it was not objected to when offered, evidence of

Monfort's Administrator *v.* Rowland.

the same character would be entitled to like effect if the sum at stake was $10,000 or $20,000. The only difference between the two cases would be the difference in the degree of temptation. This question, as it appears to me, may be easily solved by the application of familiar principles. A party who sets up the defence of usury is bound to prove it or fail. The burden is on him to convince the judgment of the court of the truth of his defence. The evidence he brings to produce this conviction must be such as the law recognizes as fit and appropriate to that end. The court is not bound to accept anything but legal evidence, and should seldom, if ever, allow its judgment to be influenced or controlled by anything else. The parties are at liberty to make such agreements respecting the evidence as they may see fit, but the court is not bound by them. The court may recognize them if it thinks proper to do so, but it should in no case sanction them if they are against the policy of the law, or dangerous to the safe administration of justice. The parties cannot, by any agreement they may make, compel the court to disregard or overthrow the law. And so the authorities declare.

In a case heard by Lord Hardwicke, it was proposed to examine a wife as a witness against her husband, with the husband's consent, but the lord chancellor refused to permit her to be examined, because to admit such evidence would be against the policy of the law. *Barker* v. *Dixie, Lee temp. Hardw. 264; 3 Greenl. Ev. § 294; 1 Dan. Ch. Pr. 894.*

The same principle has been applied to a case where the solicitor of the defendant had agreed not to object to a paper being admitted in evidence as an agreement, because it was not stamped. *Owen* v. *Thomas, 3 Myl. & K. 353.*

If the opposite rule were allowed to prevail, it would be possible for the parties to compel the court to decide a case not only contrary to law, but against the truth and the right.

In my judgment, it is clearly within the power of the court to overrule the incompetent evidence admitted in this case, and, in my opinion, that power should be exercised. The evidence given for the defence by George H. Rowland, so far as it purports to prove transactions with and statements by the intestate,

will be overruled, but liberty will be given to the defendants to produce such competent evidence in support of their defence as they may be able to produce.